UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDY STRADLEY,

           CASE NO. 16-cv-11563
    *Plaintiff*,      DISTRICT JUDGE THOMAS L. LUDINGTON
*v.*           MAGISTRATE JUDGE PATRICIA T. MORRIS

CORIZON HEALTH CARE PROVIDER,
VINDHYA JAWARDENA,
ISAIAH TODD,
JAMIE CAMPBELL,
ROSEMARY A. SEKOU,
and JOHN DOE

    *Defendants*.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS CORIZON AND JAWARDENA'S MOTION TO DISMISS (Doc. 14)

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 14) be **GRANTED** and that defendants Corizon and Jawardena be dismissed from this case.

**II.  REPORT**

  **A.  Introduction**

Plaintiff Randy Stradley, a state prisoner, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983 on April 29, 2016. (Doc. 1). Defendants Corizon Health Care Provider ("Corizon") and Dr. Vindhya Jawardena (collectively, "Defendants") filed the instant Motion to Dismiss on September 21, 2016. (Doc. 14). Plaintiff responded to this

1

Motion on October 14, 2016, (Doc. 17), and Defendants replied. (Doc. 20). Thereafter, Plaintiff filed a First Amended Complaint against P.A. Jamie Campbell, Corizon, Dr. Jawardena, R.N. Rosemary A. Sekou, Dr. Isaiah Todd, and Heidi Washington on December 9, 2016. (Doc. 24). Defendants filed an Answer and Affirmative Defenses on January 9, 2017. (Docs. 30-31).

### 1.      Plaintiff's Original Complaint[1]

In his original complaint, (Doc. 1), Plaintiff notes that he "is incarcerated within the MDOC, at Kinross Correction Facility, . . ." (Doc. 1 at 4). While incarcerated at the Ryan Correctional Facility, his cellmate struck him in the face repeatedly, causing him to "lose consciousness." (*Id.*). After being escorted infirmary, the nurse "improperly released" Plaintiff despite "extreme pain" due to his injuries. (*Id.*).

On February 22, 2012, Plaintiff was taken to "Detroit Medical Center, Emergency Department," where "Dr. Atas . . . found Plaintiff[] [had] significant trauma to the face," including a left eye that appeared "extremely injected and chemotic" and "swoll[e]n shut," "bruising over the left zygomatic arch," "crepitance and subcutaneous air that is palpable around the orbit," "significant bruising over the left mandible," "bruising and contusions of the left buccal surface of the cheek," "an abrasion of the inner left lower lip," and "pain over the left nasal bone . . . ." (Doc. 1 at 4-5). A CAT scan confirmed her findings, "showing a nasal bone fracture and obital [sic] blowout fracture and maxillary sinus fracture as [sic] zygomatic arch fracture." (Doc. 1 at 5). On his February 23, 2012 discharge, a separate

---

[1] In quoting Plaintiff's language, I omit all underlining and bolding.

doctor recommended that Plaintiff "return to the emergency room" if "any point develops and newer symptoms" appear. (*Id.*).

In treating his injuries, Plaintiff alleges that in the weeks after his release, P.A. Campbell and Dr. Jawardena persistently underestimated his pain. On February 24, 2012, Dr. Jawardena found "tenderness upon palpation at medial aspect of L cheek near nasal region" but "no crepitus or body abnormalities . . . ." (Doc. 1 at 6). On February 29, 2012, Plaintiff's "left eye was still swollen shut," his facial bones broken, and "in extreme pain [from] the injuries," but P.A. Campbell and Dr. Jawardena found "no pain[.]" (*Id.*).

On March 1, 2012, "RRF Medical Department received a copy of" his paperwork from Detroit Medical Center. (*Id.*). Twenty days later, R.N. Phillip Payne scheduled Plaintiff "for sick call regarding [his] complaint" of "broken bones," "headaches," "teeth pain," and "drainage from [his] left cheek," but upon examination on March 23, 2012, R.N. Sekou "refused followup treatment by Detroit Medical Center" because she felt "followup treatment would be denied due to costs." (Doc. 1 at 6-7). This, Plaintiff asserts, contravened instruction from Detroit Medical Center "to immediately return patient when new problems occur." (Doc. 1 at 7).

On March 30, 2012, Plaintiff again complained of "pain over the left cheek bone and upper teeth on the left side," as well as "draining of white puss [from the] left side of [his] face," and Dr. Jawardena "ignored" these complaints, urging instead a "followup with dentistry" (*Id.*) (internal quotation marks omitted). The dentist, Dr. Todd, examined Plaintiff and his Px-rays, determined that they "did not evidence root fractures," and then "advised to send a medical kite if swelling or pain persists," contrary to Plaintiff's "specific

3

request to be sent back to Detroit Medical Center, ER." (*Id.*). This occurred again on August 2, 2012, when Plaintiff "made specific complaints regarding the above stated specific area of the pain on the left side of his face, and top roll of teeth," and Dr. Todd "provided a few packets of aspirin" rather than sending him to Detroit Medical Center. (*Id.*).

While at Muskegon Correctional Facility on January 3, 2013, a dental assistant "processed Plaintiff's request for dental assistance due to 'pressure pain.'" (Doc. 1 at 8). On January 11, 2013, Dr. Kevin Murphy adjusted Plaintiff's bite, but he continued to suffer pain, and on September 2, 2014, Dr. Sherrell Byard "merely prescribed antibiotics." (*Id.*). On October 9, 2014, Plaintiff's request "to be seen by a specialist due to pain pressure on the whole upper left side" was processed, and on October 13, 2014, Dr. Murphy submitted a request for authorization of payment to send Plaintiff to an Offsite Oral Surgeon." (*Id.*). In turn, Dr. William Schiro, an oral surgeon, "issued his professional opinion that" Plaintiff "suffers from, 'a depressed infra orbital maxillar fracture which may have caused some impingement on the infra orbital nerve and/or one of the maxillar branches. . . . [And] because of the long delay in healing, a nerve decompression procedure would be questionable.'" (Doc. 1 at 8-9).

On January 26, 2015, Dr. Schiro further concluded that due to the "time laps[e] since [Plaintiff's injuries] initially occurred, the likelihood of interventive surgical procedure to decrease the dysethesis is highly unlikely." (Doc. 1 at 9). Several months later, on April 2, 2015, oral surgeon Dr. John Downs "agreed with the findings of [Dr. Schiro] in the procedure to remove the pressure from the infraorbital nerve would not work because bond

has grown over the nerve," and on December 9, 2015, Dr. Downs "performed post-neurectomy of [the] inferior orbital canal on the left side of Plaintiff's face." (Doc. 1 at 9-10). Unfortunately, "removal of the nerve caused the left side upper gum to be numb all the time," and when exposed to cold weather this "became painful," a side-effect of which Plaintiff alleges Dr. Downs failed to warn him. (Doc. 1 at 10).

### 2.      Plaintiff's First Amended Complaint

Plaintiff's First Amended Complaint remains consistent with his original complaint in relatively all respects, except that he provides extra information as to his alleged conditions and the procedure Dr. Downs performed on December 9, 2015: "'[T]he maxillary left sinus and using a periosteal elevator, the mucoperiosteum was reflected superiorly to expose the left maxillary anterior sinus wall and the area of the infraorbital nerve and foramina. The trauma that he had sustained 3 years prior had markedly changed the anatomy of the area. The sinus was . . . collapsed and the infraorbital for[a]mina was crushed and the areas [were] cleansed and the contents of the foramina [were] removed in total.'" (Doc. 24 at 9-10). He added further that he has "Chronic Obstructive Pulmonary Disease," causing shortness of breath and difficulty breathing. (Doc. 24 at 10). The damage to his "left sinus cavity [also] obstructs the ability to talk coherently." (*Id.*). At "Lakeside Correction Facility," he alleges that Dr. Woral "responded to Plaintiff's inability to breath, stating that [he] can still breath[e] through the mouth" and "[r]efus[ed] further inquiry." (*Id.*). Thereafter, Dr. Downs, "employed by Corizon, stated to have attempted but could not repair the smashed left sinus cavity." (*Id.*).

### B.      Motion to Dismiss Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were

6

"conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the

contours and details of the plaintiff's [second amended] complaint, and added nothing new," did not convert the motion to dismiss into a motion for summary judgment).

Because Plaintiff proceeds *in forma pauperis*, his complaint remains subject to *sua sponte* dismissal "at any time" if this Court finds that his complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.      Analysis and Conclusion

"As a general rule, a motion to dismiss [is] rendered moot once a plaintiff has an amended complaint on record." *Vickery v. Caruso*, No. 07-CV-13419, 2009 WL 368303, at *2 (E.D. Mich. Feb. 12, 2009); *accord Williams v. Kelly*, No. 07-10999, 2007 WL 2951303, at *1 (E.D. Mich. Oct. 10, 2007) (denying a motion to dismiss because "the Complaint to which it is directed has been superseded by an Amended Complaint"). Nevertheless, because Plaintiff's suit remains subject to *sua sponte* dismissal upon discovery that it fails to state a claim, I proceed to consider Defendants' argument alongside whether Plaintiff's First Amended Complaint states a valid claim.

Section 1983 is "an appropriate vehicle for an inmate . . . to bring a 'deliberate indifference' challenge to the constitutionality" of actions or policies to which he is subject or has been subjected. *Nelson v. Campbell*, 541 U.S. 637, 644 (2004). In *Estelle v. Gamble*, the Supreme Court held "that deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause because it constitutes the "unnecessary and wanton infliction of pain'" and is "repugnant to the conscience of mankind" by offending our "evolving standards of decency." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 97, 104 (1976)). To establish a cognizable

8

claim, Plaintiff's allegations must show "sufficiently harmful" acts or omissions. *Id.* at 106. "[I]nadvertent failure to provide adequate medical care . . . will not violate the Constitution." *Id.*

The 'deliberate indifference' inquiry incorporates objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry asks whether the deprivation was "sufficiently serious," which a claimant satisfies where it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)) (internal quotation marks omitted). The subjective inquiry considers whether official's state of mind was sufficiently culpable; it requires a showing that an official "knows of and disregards an excessive risk to inmate health or safety." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 837) (internal quotation marks omitted). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.*

In a § 1983 action, the state statute of limitations for personal injury delineates the appropriate limitations period. *Bedford v. Univ. of Louisville Sch. of Med.*, 887 F.2d 1086, at *2 (6th Cir. 1989) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). By contrast, "federal law determines the accrual of civil rights claims." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The relevant statute in the State of Michigan limits time to file civil rights

suits under § 1983 to three years. *See* Mich. Comp. Laws § 600.5805(10). This limitations period begins to run when a claimant "knows or has reason to know of the injury which is the basis of his action." *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (internal quotation marks omitted)).

Defendants contend that the applicable statute of limitations bars Plaintiff's suit. They suggest, correctly, that per MDOC Policy Directive 03.02.130, "the maximum amount of tolling" on Plaintiff's § 1983 claims "is 150 days." *See Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) ("The statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies."); (Doc. 14, Ex. A at 4). They then calculate that Plaintiff's claim "at most can reach back to . . . November 30, 2012 . . . ." (Doc. 14 at ID 55).[2] And Plaintiff does indeed contend that he last saw Dr. Jawardena on March 30, 2012, whereupon he recommended that Plaintiff follow up "with dentistry." (Doc. 1 at 7). Because Plaintiff's claim against Dr. Jawardena accrued during their treatment relationship, and because that relationship ended more than three years before November 30, 2012, Plaintiff fails to state a claim against Dr. Jawardena. *Cf. Owens v. Correctional Medical Services, Inc.*, 2006 WL 3344986, at *3 (W.D. Mich. Nov. 17, 2006) ("Plaintiff had reason to know of the harm done to him when CMS denied him treatment in 2002. Hence, his claims accrued in 2002.").

---

[2] Plaintiff alleges that he exhausted two grievances completely, but provides no details as to when he exhausted these grievances. For the purposes of this report and recommendation, therefore, I will assume that his claims were tolled for the maximum amount of time—that is, until November 30, 2012.

Alongside these allegations, Plaintiff also suggests that Corizon employed Dr. Downs, who last treated Plaintiff on December 9, 2015. (Doc. 24 at 10). As a contracted provider of prison health services, Corizon acted in the capacity of a governmental actor when its employees treated Plaintiff. *See West v. Atkins*, 487 U.S. 42, 53-54 (1988) ("[T]he inference to be drawn from *Estelle* is that the medical treatment of prison inmates by prison physicians is state action."). Although such allegations are not barred by the statute of limitations, they nevertheless fail to state a claim. Even assuming that Plaintiff suffered a constitutional deprivation at the hands of Dr. Downs—or any other Corizon employees, for that matter—Plaintiff could not hold Corizon vicariously liable for such conduct. *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014) ("[P]rivate corporations cannot be held liable on the basis of respondeat superior or vicarious liability.") He would need to allege a "direct causal connection" between Corizon's "policies or customs" and his "constitutional injury" to state a viable § 1983 claim. *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005); *see Shadrick v. Hopkins Cty.*, 805 F.3d 724, 737 (6th Cir. 2015) (describing a culpable state of mind as "failing to train and supervise . . . nurses working within the jail environment"). Liability could only attach if Corizon itself was a "moving force" behind the "deprivation of [Plaintiff's] federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *accord Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("[L]iability only attaches where a custom, policy, or practice attributable to the [government actor] was the 'moving force' behind the violation of the plaintiff's constitutional rights."); *Shadrick*, 805 F.3d at 752 (Griffin, J., dissenting on other grounds);

11

*Rouster*, 749 F.3d at 453. Plaintiff makes no such allegations, and therefore fails to state a claim against Corizon.

For the reasons stated above, I recommend that Defendants' Motion to Dismiss, (Doc. 14) be **GRANTED** and defendants Corizon and Jawardena be **DISMISSED** from this action.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file

a concise response proportionate to the objections in length and complexity. Fed. R. Civ.

P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue

raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Date:  February 1, 2017                                    S/ PATRICIA T. MORRIS
                                                           Patricia T. Morris
                                                           United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date
through the Court's CM/ECF system which delivers a copy to all counsel of record.  A
copy was also sent via First Class Mail to Randy Stradley #171195 at Kinross
Correctional Facility, 4533 W. Industrial Park Drive, Kincheloe, MI 49786.

Date: February 2, 2017                                     By s/Kristen Castaneda
                                                           Case Manager